**Phil JOHNSON, Respondent,**

v.

**J. Edward McCULLOUGH, M.D., and Mid–America Gastro–Intestinal Consultants, P.C., Appellants.**

**No. SC 90401.**

Supreme Court of Missouri,
En Banc.

March 9, 2010.

Rehearing Denied April 20, 2010.

Jonathan P. Kiefer, Brandon D. Henry, Adam S. Davis, Wagstaff & Cartmell LLP, Kansas City, for appellants.

Laurie L. Del Percio, Douglas R. Horn, The Horn Law Firm, P.C., Independence, for respondent.

Leland F. Dempsey, Ashley L. Baird, Dempsey & Kingsland, P.C., Kansas City, for amicus curiae Missouri Association of Trial Attorneys.

PER CURIAM.

J. Edward McCullough and Mid–America Gastro–Intestinal Consultants (collectively "Defendants") appeal from the trial court's judgment granting Phil Johnson's motion for a new trial alleging intentional nondisclosure by a juror. After disposition by the court of appeals,[1] this Court granted transfer. Mo. CONST. art. V, sec. 10.

This Court affirms the trial court's judgment. Counsel's question during voir dire regarding jurors' prior involvement in litigation was clear and unambiguous, triggering the jurors' duty to respond. Moreover, the trial court did not abuse its discretion in finding intentional nondisclosure and ordering a new trial. Contrary to Defendants' argument, Johnson was not required to present either an affidavit or testimony to support a finding of intentional nondisclosure. Lastly, this Court finds that the trial court did not err in finding that the juror intentional nondisclosure argument was timely raised. Under the case law at the time of trial, it was timely raised. However, this Court will adopt a formal rule requiring litigants to promptly bring to the trial court's attention information about jurors' prior litigation history. Until that time, a party must use reasonable efforts to examine the litigation history on Case.net[2] of those jurors selected but not empanelled and present to the trial court any relevant information prior to trial, as set out in this opinion.

## I. Background

Johnson brought a medical malpractice lawsuit against Defendants alleging he received negligent medical treatment from Defendants for a throat condition. According to Johnson, Defendants' negligent medical care, in which surgery was performed, resulted in permanent throat injuries.

During voir dire, Johnson's counsel asked about prior involvement in litigation by any venire member. Specifically, counsel asked, "Now not including family law, has anyone ever been a plaintiff or a defendant in a lawsuit before?" Although numerous members of the panel responded affirmatively, venire member Mims did not

---

1. Portions of the court of appeals opinion authored by the Honorable Harold L. Lowenstein are incorporated in this opinion without further attribution.

2. Case.net can be accessed using the following web address:https://www.courts.mo.gov/casenet.

respond to the question and eventually was chosen to sit on the jury.

At the close of a six-day trial, the jury deliberated for 40 minutes and returned a verdict in Defendants' favor. Mims signed the verdict. After the trial, Johnson's counsel investigated Mims' civil litigation history using Missouri's automated case record service, Case.net, and discovered that Mims previously had been a defendant in multiple debt collection cases and in a personal injury case. At least three of the lawsuits against Mims were recent, as they were filed within the previous two years.

Johnson filed a motion for new trial alleging Mims intentionally failed to disclose her prior litigation experience when asked during voir dire. The trial court conducted a hearing on the motion. Johnson supported his allegation of intentional nondisclosure by presenting the litigation records he discovered on Case.net. Johnson did not call Mims or any other witnesses to testify at the hearing, nor did he obtain an affidavit from Mims to support his argument.

After the hearing concluded, the trial court granted Johnson's motion and ordered a new trial. The court determined that counsel's question during voir dire was clear and unambiguous and that Mims' involvement in prior litigation was recent. As a result, her failure to respond constituted an intentional nondisclosure. The court inferred prejudice from the intentional concealment. The court reached no decision as to Johnson's additional arguments in support of his motion for new trial, finding the issue of intentional nondisclosure dispositive. Defendants appeal.

## II. Analysis

### A. Standard of Review

■ This Court will not disturb the trial court's ruling on a motion for a new trial based on juror nondisclosure unless the trial court abused its discretion. *Wingate by Carlisle v. Lester E. Cox Med. Ctr.*, 853 S.W.2d 912, 917 (Mo. banc 1993). A trial court abuses its discretion if its "ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

### B. Clarity of Question

■ A member of the venire has a duty during voir dire examination to give full, fair, and truthful answers to all questions asked of him or her specifically, as well as those asked of the panel generally, so that his or her qualifications may be determined and challenges may be posed. *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). The duty to disclose is triggered only after a clear question has been asked. *Brines by Harlan v. Cibis*, 882 S.W.2d 138, 139 (Mo. banc 1994). The question asked during voir dire must clearly and unambiguously trigger the juror's obligation to disclose the information requested. *See Carlisle*, 853 S.W.2d at 916. In reviewing the grant of a motion for new trial based on a claim of juror nondisclosure, this Court first must determine, from an objective standpoint, whether the question asked of the prospective juror was sufficiently clear in context to have elicited the undisclosed information. *See Brines*, 882 S.W.2d at 139. Whether a question was sufficiently clear is a threshold issue that this Court reviews de novo. *Keltner v. K–Mart Corp.*, 42 S.W.3d 716, 723 (Mo.App.2001).

■ During voir dire, Johnson's counsel asked the venire members, "Now not including family law, has anyone ever been a plaintiff or a defendant in a lawsuit before?" Several venire members disclosed

prior involvement in lawsuits. One venire member mentioned her involvement as a defendant in a personal injury suit against a limited liability company she owned with her husband. Another venire member disclosed a "dog-bite" lawsuit when, as a child, her parents sued the dog owner on her behalf. Numerous other venire members disclosed lawsuits in which they acted as a plaintiff or a defendant. Among the various disclosures were a class action lawsuit, a property dispute, a car accident case, and a discrimination lawsuit. After each individual disclosure, counsel merely asked the responding venire members whether the experience would affect his or her ability to be a fair and impartial juror in this case. Counsel did not delve further into each venire member's response. Upon eliciting all of the preceding disclosures, counsel asked, "Now did I miss anyone here? I just want to make sure. No other people that have been, not including family law, a plaintiff or a defendant on any case? Let the record reflect that I see no additional hands." Juror Mims remained silent throughout this line of questioning.

■■ Defendants contend that the inquiry at issue was unclear because the phrase "now not including family law" renders the question ambiguous and confusing. "The issue is whether a reasonable venire member *would have* understood what counsel intended." *McBurney v. Cameron*, 248 S.W.3d 36, 42 (Mo.App. 2008). "The duty of counsel to show that the question was clear is not satisfied when some venire members could reasonably think one thing, and some other venire members could reasonably think the opposite." *Id.* at 46. The record must demonstrate that, from an objective standpoint, the question was clear in the total applicable context. *Id.* Here, the total applicable context does not render counsel's

inquiry unclear. The question generally asked about prior litigation experience and specifically excluded any litigation involving domestic relations. In cases where counsel's question during voir dire regarding prior litigation experience has been deemed unclear, a general question is typically followed or surrounded by more detailed questions "honing in" on specific lawsuits. *Id.* For example, in *Payne v. Cornhusker Motor Lines, Inc.*, the court found that, taken in context, counsel's question asking venire members to disclose claims made "for personal injuries or monetary damages" did *not* clearly require disclosure of a property-damage lawsuit in which a venire member was a plaintiff. 177 S.W.3d 820, 842–43 (Mo.App.2005). Additionally, in *McBurney v. Cameron*, the court determined that, in context, counsel's general question regarding prior litigation experience was extensively surrounded with questions about personal injury claims and litigation. 248 S.W.3d at 45. The majority in *McBurney* could not isolate the general question regarding prior litigation experience from its surrounding context and, therefore, could not find that a reasonable venire member would have understood counsel's general question about prior litigation experience was intended to solicit information about *"all kinds of claims and cases."* *Id.* at 46.

Here, the inquiry into prior litigation experience is similar to counsel's questioning in *Massey v. Carter*, in which counsel asked generally, "Have any of you ever filed a lawsuit?" 238 S.W.3d 198, 201 (Mo. App.2007). After a venire member mentioned filing a claim "as a homeowner," and after finding out the venire member was satisfied with how things were resolved in that case, counsel asked, "Have any of you ever been sued by anyone?" *Id.* The juror in question failed to disclose he had been sued five times in collection lawsuits. *Id.* at 200. The court in *Massey*

pointed out that, after the question about having been "sued by anyone," there were no follow-up questions "honing in" on a specific kind of lawsuit, as there was in *Payne.* *Id.* at 201. The court determined that counsel's question "remained a general question." *Id.*

Applying the objective standard of clarity developed in prior case law, this Court agrees with the trial court's assessment that the voir dire question was reasonably clear and triggered Mims' duty to disclose the multiple debt collection lawsuits against her and the suit for personal injuries. The question remained a general question and was not rendered confusing or ambiguous by surrounding context. ·Counsel's question clearly indicated that he was not interested in disclosure of "family law" disputes. From the standpoint of a reasonable lay person, debt collection lawsuits and suits for personal injuries are not excluded by counsel's general inquiry into prior litigation experiences. With the question so narrowed, counsel's question unequivocally triggered Mims' duty to disclose. However, Mims remained silent. Failure to answer a clear question is considered a nondisclosure. *Id.* Accordingly, the trial court correctly determined that counsel's question was reasonably clear.

## C.  Intentional Nondisclosure

■■■ After it is objectively determined that the question *was* reasonably clear in context and that a nondisclosure occurred, this Court reviews whether the trial court abused its discretion in deciding whether the nondisclosure was intentional or unintentional. *McBurney,* 248 S.W.3d at 42. Here, the trial court determined that Mims' nondisclosure of her involvement in prior litigation was intentional and, therefore, inferred prejudice from her concealment. The distinction between in-

tentional and unintentional nondisclosure is significant. As this Court explained in *Wilford,* this distinction determines whether prejudice can be inferred from a nondisclosure. 736 S.W.2d at 37. If the nondisclosure was unintentional, a new trial is not warranted unless prejudice resulted from the nondisclosure. *Id.* On the other hand, bias and prejudice is presumed if a juror intentionally withholds material information. *Brines ex rel. Harlan v. Cibis,* 882 S.W.2d 138, 140 (Mo. banc 1994). "[Q]uestions and answers pertaining to a prospective juror's prior litigation experience are material." *Brines,* 882 S.W.2d at 140. A finding of intentional concealment of material information has " 'become tantamount to a per se rule mandating a new trial.' " *Id.* (quoting *Wilford,* 736 S.W.2d at 37).

■■■ Although Johnson did not provide the trial court with any *direct* evidence explaining why Mims failed to answer the pertinent questions as to a material matter, the trial court's determination that Mims' nondisclosure was intentional is not an abuse of discretion. "The determination of whether concealment is intentional or unintentional is left to the sound discretion of the trial court." *Wilford,* 736 S.W.2d at 36. The record establishes that a nondisclosure occurred, as Mims did not respond to counsel's clearly asked question, and that Mims' involvement in prior litigation is both extensive and recent, as demonstrated by counsel's litigation records search via Case.net. Defendants cite no case law supporting their argument that either an affidavit or testimony is necessary to support a finding of intentional nondisclosure. In this case, the trial court based its findings on the Case.net litigation records submitted by Johnson, which demonstrated Mims' involvement as a defendant in multiple recent lawsuits.

At least three of the lawsuits against Mims were filed within the previous two years.[3]

Although the better practice here would have been for the party seeking a new trial to have deposed Mims, obtained an affidavit, or had her testify, under these facts there was no reasonable inability to understand the question, as several venire members provided relevant disclosures of prior litigation experience, and Mims' litigation history was of such significance that forgetfulness is unreasonable, as her experiences were both numerous and recent. The trial court properly found that Mims' nondisclosure was intentional. Because Mims' nondisclosure was intentional, bias and prejudice are presumed. *See Brines,* 882 S.W.2d at 140. A finding of intentional concealment of material information has " 'become tantamount to a per se rule mandating a new trial.' " *Id.* (quoting *Wilford,* 736 S.W.2d at 37). "[Q]uestions and answers pertaining to a prospective juror's prior litigation experience are material." *Id.* The trial court did not abuse its discretion in finding intentional nondisclosure and ordering a new trial.

### D.    Timeliness of Challenge

■ Finally, Defendants contend that the trial court erred in granting a new trial because Johnson's juror nondisclosure argument was untimely, as it was brought after Johnson received an adverse verdict following a six-day jury trial. In support, Defendants point to *McBurney,* where that court commented in dicta about the issue. 248 S.W.3d at 41.

In *McBurney,* the court of appeals noted that the issue of timeliness and waiver was first raised by this Court in *Brines.* In *Brines,* those plaintiffs appealed an adverse verdict on the basis of one juror's

failure to disclose during voir dire that he had been a defendant in multiple collection cases. *Id.* at 139. The defendant argued a claim based on litigation history must be raised before submission, and if it is not, it is untimely and waived. *Id.* at 140. The Court rejected the defendants' argument that an issue regarding prior litigation experience must be raised before submission. *Id.*

The court of appeals resurrected the issue in *McBurney,* stating that "the issue may not necessarily be settled forever in view of the technological advances in the thirteen years since *Brines.*" 248 S.W.2d at 41. *McBurney* displayed the court of appeals' willingness to delve into a claim about the issue of timeliness and waiver, "at least with regard to cases that extend beyond a short time." *Id.* With the relative present day ease of procuring the venire member's prior litigation experiences, via Case.net, "[w]e encourage counsel to make such challenges *before* submission of a case whenever practicable." *Id.* at 41.

This Court cannot convict the trial court of error in following the law in existence at the time of trial. *See, e.g., McCracken v. Wal–Mart Stores East, LP,* 298 S.W.3d 473, 479–80 (Mo. banc 2009). Further, there was no evidence that it was practicable for the attorneys in this case to have investigated the litigation history of all of the selected jurors prior to the jury being empanelled. Accordingly, there was no error in the trial court's determination that Johnson's juror nondisclosure argument was timely.

■ However, in light of advances in technology allowing greater access to information that can inform a trial court

---

**3.** There was no dispute that the Mims contained in the Case.net records was in fact the same person as the juror empanelled.

about the past litigation history of venire members, it is appropriate to place a greater burden on the parties to bring such matters to the court's attention at an earlier stage. Litigants should not be allowed to wait until a verdict has been rendered to perform a Case.net search for jurors' prior litigation history when, in many instances, the search also could have been done in the final stages of jury selection or after the jury was selected but prior to the jury being empanelled. Litigants should endeavor to prevent retrials by completing an early investigation. Until a Supreme Court rule can be promulgated to provide specific direction, to preserve the issue of a juror's nondisclosure, a party must use reasonable efforts to examine the litigation history on Case.net of those jurors selected but not empanelled and present to the trial court any relevant information prior to trial.[4] To facilitate this search, the trial courts are directed to ensure the parties have an opportunity to make a timely search prior to the jury being empanelled and shall provide the means to do so, if counsel indicates that such means are not reasonably otherwise available.

### III. Conclusion

The judgment of the trial court is affirmed.

All concur.

---

4. Because Case.net is not an official record, this Court recognizes its limitations. First, Case.net may contain inaccurate and incomplete information. Second, Case.net may have limited usefulness in searches involving common names or when a person's name has changed. Until a more specific rule is promulgated, the trial court must determine whether a party has made a reasonable effort in determining a juror's prior litigation history by searching Case.net. Searches of other computerized record systems, such as PACER, are not required.